### JACKSON v. PATERNO.

(Supreme Court, Appellate Division, First Department. November 13, 1908.)

1. LANDLORD AND TENANT (§ 164*)—FLATS—INSUFFICIENT HEAT—EFFECT.

A tenant of an apartment to be used as a private dwelling cannot recover for discomfort caused by insufficient heating of it, where he remained in possession for the term and the lease did not require the landlord to furnish heat, though the heating appliances were under the landlord's exclusive control, and though the tenant could have refused to occupy the apartment on discovering that the heating apparatus was insufficient.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 164.*]

2. LANDLORD AND TENANT (§ 164*)—APARTMENTS—LANDLORD'S DUTY.

Where a landlord of an apartment building retains possession of a large portion thereof, which is to be used in common by the tenants, he must maintain in good condition the part which the tenant has a right to use, and is liable for any damage to the tenant caused by his failure to do so.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 630; Dec. Dig. § 164.*]

Appeal from Appellate Term.

Action by Lawrence S. Jackson against Carolina T. Paterno. From an order of the Appellate Term (58 Misc. Rep. 201, 108 N. Y. Supp. 1073), reversing an order of the Municipal Court, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert P. Stephenson, for appellant.
Peter Lowenfeld, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am, Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, J.　The plaintiff leased an apartment from the defendant by a written lease in which it was described as "the apartment No. 62, on floor sixth of the house known and designated as 'La Valenciennes,' No. 404 West 116th street, in the city of New York, borough of Manhattan, for the term of six and one-half months, to commence November 15, 1906, and to end May 31, 1907, to be occupied as a strictly private dwelling apartment for his family, consisting of his immediate family, and not otherwise," which the plaintiff occupied for the term.　The only method of heating the apartment was by radiators in each room connected with a boiler in the cellar of the building under the control of the landlord, and during the winter months the landlord undertook to furnish sufficient steam to heat the apartment.　The plaintiff paid his rent and continued to occupy the apartment during the whole term.　In March, before the term had expired, the plaintiff commenced this action to recover the damage sustained in consequence of a breach of what the complaint calls an implied covenant to heat the apartment, claiming that the heat furnished to the apartment was not sufficient, that several rooms could not be occupied during a portion of many days during the winter on account of lack of heat, and that his family were rendered uncomfortable in consequence of the low temperature of the apartment.　The trial court awarded plaintiff a judgment fixing the damages at $100. This was reversed by the Appellate Term, which allowed an appeal to this court.

. Several interesting questions are presented on this appeal.　The lease contains no reference to heating the demised premises, and there is no covenant on the part of the landlord to supply heat, or that the temperature of the demised premises should be maintained during the winter by the landlord.　What was rented, however, was an apartment the rooms of which contained no provision for heating it, except that which was connected with the heating apparatus under the control of the landlord.　It was rented for 6½ months, from November 15th to May 31st, which included the winter months, and was rented to be occupied by the tenant as a strictly private dwelling for his family, and not otherwise.　Considering the nature of the apartment, the method provided for heating it, and the use to which the apartment was restricted, it was rented as an apartment convenient for use as a dwelling for the family of the tenant.　In this climate during the winter months an apartment without artificial heat of some kind cannot be occupied as a family dwelling.　The premises were rented for a purpose which required that the apartment should be artificially heated.　Unless the temperature, therefore, was maintained so that the apartment could be occupied for the purpose for which it was rented, they were not the premises that were leased and which the tenant was bound to occupy.　It would seem, therefore, that after the lease was signed and before the tenant had taken possession, if he had discovered that the heating appliances were insufficient to keep the apartment in such a condition that it could be occupied by his family, he would have been justified in refusing to occupy the premises, and could have defended an action under the covenant to pay rent on the ground that the landlord had never furnished him with such

an apartment as was contemplated by the lease. And so, after the apartment had been occupied, but upon the arrival of cold weather, if it was found that the heating apparatus was incapable of keeping the apartment at a temperature sufficiently high to enable it to be occupied by his family as a living apartment, the tenant would have been justified in surrendering possession, and could have defended an action for the rent on that ground. Plaintiff, however, retained possession of the premises as a residence for his family, and, although constantly complaining of the temperature maintained by the defendant, he continued to occupy them. If there had been a covenant to furnish heat, which defendant had broken, the plaintiff could have maintained an action for any damages that he had sustained. Thomson-Houston Electric Co. v. Durant Land Improvement Co., 144 N. Y. 34, 39 N. E. 7. But it seems to me that there was no such implied covenant for a breach of which an action for damages would lie.

As before stated, the lease is entirely silent as to heating the apartment. What the landlord did was to lease an apartment to the plaintiff to use as a residence for himself and his family. He made no agreement as to the temperature of the apartment. There was no undertaking on the part of the landlord to supply heat or to keep the apartment at any particular temperature. If the defendant failed to comply with his lease and furnish to the plaintiff the apartment that he had leased to him, the tenant was under no obligation to occupy the apartment; but, having continued to occupy it during the whole of the term for which it was leased, he was bound to pay the rent reserved, and in the absence of a covenant of the landlord to supply sufficient heat to maintain a particular temperature it seems to me that no action for damages would lie because the temperature was not that desired by the tenant. The obligation of the landlord of an apartment of this character, where the landlord retains possession of a large part of the building, which is to be used in common by the tenants, undoubtedly imposes upon the landlord the duty of maintaining in good order and condition the portion of the building which the tenant has a right to use. For a violation of this duty the landlord would be responsible to the tenant for any damage that was sustained by him. If the halls, stairways, or elevators of the building are not maintained by the landlord in a proper condition for use, or if the walls or roof of the building are allowed from lack of repair to leak, so that the tenant's property was injured, there would undoubtedly be an action for damages against the landlord, not, as I understand, upon the breach of an implied covenant, but because the landlord had failed to perform a duty which he assumes when he leased the apartment, and was liable for the damage that resulted. But there was no evidence that this heating apparatus was not sufficient to heat the apartment. All that appears is that for some unexplained reason the temperature of the apartment was not maintained, so as made it a comfortable residence for the plaintiff's family during some portion of the winter; but, having continued to occupy the premises, he became liable for the rent, and for the mere discomfort which resulted from an insufficient temperature there was no cause of action.

If we assume, however, that there was a cause of action, and that

the landlord was liable for any damages that resulted from his failure to maintain the temperature so that the apartment was what he rented—an apartment suitable for occupation as a strictly private dwelling apartment—there was no damage proved. The evidence that an apartment of that kind without heat was of no value would not be a defense by the tenant to an action for rent, and would not justify a counterclaim, an action for damages, or an action to recover back the rent paid, as the tenant occupied the premises for the occupation of which he covenanted to pay the rent. All that was attempted to be proved was that an unheated apartment of this kind, with no method of heating it, was of no value. The defendant offered some evidence to show that this apartment could have been heated by gas stoves or gas heaters at an expense not exceeding $5 a month. But as the tenant made no attempt to supply this deficiency of heat, and was therefore put to no expense in consequence thereof, he was not entitled to recover for an expenditure which he did not make, assuming that he might have made it and so supplied the deficiency. As to the illness of his child the evidence was not sufficient to justify a finding that this illness was caused by this low temperature, nor is there any evidence to show that the plaintiff had been put to any expense in consequence of it. The utmost that can be said in this case is that for some portion of this winter the premises were not maintained in the condition contemplated by the lease, which would have justified the tenant as treating it as a constructive eviction and surrendering the premises; but, in the absence of some covenant of the landlord to supply heat to the premises, an action for damages would not lie.

It follows that the determination appealed from must be affirmed, with costs, and judgment ordered for the defendant on the stipulation, with costs.

LAUGHLIN, CLARKE, and SCOTT, JJ., concur. PATTERSON, P. J., concurs in result.